# Illinois Official Reports

## Supreme Court

---

### *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200

---

| | |
|---|---|
| Caption in Supreme Court: | DONNA COCHRAN, Appellee, v. SECURITAS SECURITY SERVICES USA, INC., Appellant. |
| Docket No. | 121200 |
| Filed | September 21, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. Peter C. Cavanagh, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. Cause remanded. |
| Counsel on Appeal | Hugh C. Griffin and Brittany L. Nelson, of Hall Prangle & Schoonveld, LLC, and Anthony R. Rutkowski, of Rutkowski Law Group, P.C., both of Chicago, for appellant. |
| | David V. Dorris, and Amelia S. Buragas, of Dorris Law Firm, P.C., of Bloomington, for appellee. |
| | Stephen Phalen, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

Justices          JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1     The issue in this case is whether a plaintiff bringing a cause of action for tortious interference with the right to possess a corpse must allege facts showing that such interference resulted from the defendant security company's wilful and wanton misconduct. For the reasons that follow, we hold that no such allegations are necessary and that recovery in such cases is permissible upon a showing of ordinary negligence.

¶ 2                          BACKGROUND

¶ 3     This appeal arises from an order granting defendant's combined motion to dismiss plaintiff's third amended complaint, brought pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)). We therefore take the following facts from that complaint and accept them as true for purposes of our review. See *Wackrow v. Niemi*, 231 Ill. 2d 418, 420 (2008).

¶ 4     On September 12, 2010, Walter Andrew Cochran died in his home at the age of 39. On September 14, 2010, Walter's body was transported to the Moultrie County morgue, where the coroner was unable to determine the cause of Walter's death. Later that same day, Walter's body was transferred to Memorial Medical Center in Springfield (Memorial) for a full autopsy. Upon arrival at Memorial, Walter's body was received by employees of defendant, Securitas Security Services, USA, Inc. Defendant is a private security firm that had contracted with Memorial to provide certain security services at the hospital, including the receiving, tracking, and releasing of bodies processed by Memorial's morgue. Upon receiving Walter's body at the morgue, defendant's employees placed it in a Ziegler case, which is a closed steel case used to store severely decomposed remains. Defendant's employees did not place a visible identification tag on Walter's body, nor did they affix an identification label to the Ziegler case containing Walter's body. Defendant's employees also erroneously recorded in the morgue's logbook that the body contained in the Ziegler case was that of a man named William Carroll. Two days later, on September 16, 2010, representatives from Butler Funeral Home (Butler) arrived at Memorial's morgue to collect William Carroll's body. Relying solely on the erroneous logbook entry, and without conducting any visual inspection of the body, defendant's employees provided Butler with Walter's body, rather than with William Carroll's body. Before the error could be discovered, Butler left Memorial with Walter's body and had it cremated. As a result, no autopsy was ever performed on Walter's body, and no cause of death was ever determined.

¶ 5     Plaintiff, Donna Cochran, is Walter's mother. In September 2012, acting both in her individual capacity and as the independent administrator of Walter's estate, plaintiff brought a seven-count complaint against defendant, Memorial, and Butler for various claims relating to the wrongful cremation of Walter's body. In June 2015, after settling her claims with both

Memorial and Butler, plaintiff filed a third amended complaint against defendant alleging one count of tortious interference with plaintiff's right to possess Walter's body. According to the third amended complaint, defendant and its employees had a duty not to interfere with plaintiff's right to possess and make appropriate disposition of Walter's body. Plaintiff alleged that defendant and its employees breached this duty by, among other things, failing to follow industry standards and hospital policies governing the identification and processing of dead bodies, failing to maintain an accurate log of the identity and location of bodies in the Memorial morgue, relying solely on an inaccurate logbook when releasing the body to Butler, releasing to Butler a body that lacked an identification tag, releasing to Butler a body that did not match the description of the body being claimed, and releasing to Butler the wrong body. Plaintiff further alleged that, as a proximate result of these acts and omissions, she experienced and suffered severe emotional distress, mental suffering, embarrassment, humiliation, and financial losses.

¶ 6    In July 2015, defendant filed a section 2-619.1 combined motion to dismiss the third amended complaint. The combined motion first sought dismissal under section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)) on the grounds that plaintiff "ignore[d] both the facts known to her and her counsel at the time of the filing of her pleading in violation of Illinois Supreme Court Rule 137 and the pleading requirements of a cause of action for interference with the right to possession of the body of a decedent under Illinois law." More specifically, defendant's motion argued that, at the time she filed the third amended complaint, plaintiff knew that (1) Memorial was the only entity that was legally authorized to release Walter's body to Butler, (2) Memorial bore sole legal responsibility for establishing procedures for the handling and release of bodies in its morgue, (3) defendant had no legal authority to release a body from Memorial's morgue, (4) defendant did not physically remove or transport Walter's body from the Memorial morgue, (5) Butler erroneously signed for Walter's body at the Memorial morgue, (6) Butler erroneously removed Walter's body from the Memorial morgue, and (7) Butler erroneously cremated Walter's body after erroneously removing it from the morgue. The motion next sought dismissal under section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)) on the grounds that plaintiff failed to allege sufficient facts showing that (1) defendant owed a duty to plaintiff, (2) defendant's conduct was wilful and wanton, (3) defendant's conduct was a proximate cause of plaintiff's claimed damages, and (4) emotional distress damages are recoverable in this type of case. Following a hearing, the circuit court of Sangamon County granted defendant's motion and dismissed the third amended complaint with prejudice. In doing so, the court explained that dismissal was warranted under section 2-615 because plaintiff "failed to plead sufficient facts to support the allegation of duty owed by the Defendant *** to the Plaintiff" and under section 2-619 because "there *** is no set of facts by which the Plaintiff may demonstrate" such a duty.

¶ 7    Plaintiff appealed, and the appellate court reversed. 2016 IL App (4th) 150791. The appellate court first held that the trial court erred in granting the section 2-619 portion of defendant's motion to dismiss both because it was not supported by the requisite affidavits and because it was effectively a section 2-615 motion to dismiss, in that it attacked the legal sufficiency of plaintiff's claim instead of raising an affirmative defense to that claim. *Id.* ¶¶ 24, 27. The appellate court then held that the trial court also erred in granting the section 2-615 portion of plaintiff's motion to dismiss. Specifically, the appellate court rejected defendant's argument that, in order to state a claim for tortious interference with the right to

possess a corpse, a plaintiff must plead specific facts demonstrating that the defendant's misconduct was wilful and wanton. Rather, the appellate court explained, the emerging standard is that such a claim may be brought on an allegation of ordinary negligence, which plaintiff's third amended complaint adequately set forth. *Id.* ¶¶ 52, 61. Accordingly, the appellate court reversed the trial court's judgment dismissing plaintiff's third amended complaint and remanded the cause for further proceedings. *Id.* ¶¶ 53, 63.

¶ 8    We granted defendant's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Mar. 15, 2016)).

¶ 9                                         DISCUSSION

¶ 10    Though defendant moved to dismiss plaintiff's third amended complaint under both section 2-615 and section 2-619 of the Code, it now defends only the section 2-615 portion of its motion, insisting that "there is no need for this Court to address the section 2-619 motion." Accordingly, we confine our analysis to section 2-615.

¶ 11    A motion to dismiss under section 2-615 challenges the legal sufficiency of a complaint. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. In ruling on such a motion, a court must accept as true all well-pleaded facts in the complaint, as well as any reasonable inferences that may arise from them. *Id.* The essential question is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Id.* A cause of action should not be dismissed under section 2-615 unless it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover. *Id.* Our review of an order granting a section 2-615 motion to dismiss is *de novo*. *Id.*

¶ 12    Plaintiff's third amended complaint alleges one count of tortious interference with the right to possess Walter's corpse. This cause of action has a settled place in Illinois law, and it rests upon the principle that "while in the ordinary sense, there is no property right in a dead body, a right of possession of a decedent's remains devolves upon the next of kin in order to make appropriate disposition thereof, whether by burial or otherwise." *Leno v. St. Joseph Hospital*, 55 Ill. 2d 114, 117 (1973). For more than a century, Illinois courts have recognized that interference with this right is an actionable wrong and that the plaintiff in such cases is entitled to recover damages for the mental suffering that is proximately caused by the defendant's misconduct. See *Drakeford v. University of Chicago Hospitals*, 2013 IL App (1st) 111366, ¶ 14; *Rekosh v. Parks*, 316 Ill. App. 3d 58, 68 (2000); *Kelso v. Watson*, 204 Ill. App. 3d 727, 731 (1990); *Hearon v. City of Chicago*, 157 Ill. App. 3d 633, 637 (1987); *Courtney v. St. Joseph Hospital*, 149 Ill. App. 3d 397, 398 (1986); *Mensinger v. O'Hara*, 189 Ill. App. 48, 55 (1914).

¶ 13    The question in this case is whether, to state a cause of action, a plaintiff alleging tortious interference with the right to possess a corpse must allege facts showing that the defendant's misconduct was wilful and wanton. Historically, this has been considered the case in Illinois, and our appellate court routinely treats the wilful and wanton standard as settled law. See, *e.g.*, *Drakeford*, 2013 IL App (1st) 111366, ¶ 14; *Rekosh*, 316 Ill. App. 3d at 68; *Kelso*, 204 Ill. App. 3d at 731; *Hearon*, 157 Ill. App. 3d at 637; *Courtney*, 149 Ill. App. 3d at 398. The curious thing about this is that, with one notable exception,[1] each of these decisions relies either directly or

---

[1]See *Courtney*, 149 Ill. App. 3d 397 (discussed *infra* ¶¶ 17-21).

- 4 -

indirectly upon *Mensinger* as the source of the wilful and wanton standard, despite the fact that *Mensinger* expressly declined to adopt that standard in this context. Indeed, it is not too much to say that the establishment of the wilful and wanton standard in this context results less from reasoned analysis than it does from unexamined assumption and mere repetition. And as we shall see, while such an assumption may have made sense in 1914, it no longer enjoys any foundation in Illinois jurisprudence.

¶ 14        In *Mensinger*, the plaintiff brought an action against undertakers who were charged with preparing his deceased wife's remains for burial. *Mensinger*, 189 Ill. App. at 49. He alleged the defendants had wrongfully and unlawfully removed his wife's hair, rendering her body unfit to be viewed and causing him to suffer greatly, both in mind and in body. *Id.* at 49-50. The circuit court dismissed the plaintiff's complaint, and he appealed. *Id.* at 49. In reversing the circuit court, the *Mensinger* court found that:

> "The decided weight of authority in this country supports the proposition that while a dead body is not considered as property, in the ordinary, technical sense in which that word is usually employed, yet the law does recognize a right, somewhat akin, perhaps, to a property right, arising out of the duty of the nearest relatives of the deceased to bury their dead, which authorizes and requires them to take possession and control of the dead body for the purpose of giving it a decent burial." *Id.* at 53-54.

Examining similar cases from other jurisdictions, the court also found that "[t]he greater weight of authority" permitted a cause of action for solely mental suffering based on "any wilful or wanton infringement" of that legal right. *Id.* at 54. It noted that, in several of the cases it relied upon, "doubt [was] expressed as to whether a recovery may be had for mental suffering, alone, in the absence of any allegation or proof of wilful or wanton misconduct," *i.e.*, when only ordinary negligence is alleged. *Id.* In any event, the *Mensinger* court ultimately did not need to resolve that question because "the averments of [the plaintiff's complaint in that case] amount to a charge of wilful misconduct on the part of the defendants" and that the circuit court therefore erred in granting the defendants' motion to dismiss. *Id.* at 51-52, 57.

¶ 15        Thus, *Mensinger* never expressly decided whether a claim for tortious interference with the right to possess a corpse may be stated absent allegations of wilful and wanton misconduct. Just as importantly, to the extent that *Mensinger* discussed that question at all, it did so in the context of a rule that this court has since refined and clarified. When *Mensinger* was decided, the settled rule in Illinois was that, absent a contemporaneous physical impact or injury to the plaintiff, there could be no recovery for negligently caused emotional distress. See, *e.g.*, *Chicago Consolidated Traction Co. v. Schritter*, 222 Ill. 364, 368 (1906); *Braun v. Craven*, 175 Ill. 401, 420 (1898). This rule applied with equal force both to the direct victims of a defendant's negligence and to bystanders who witnessed the injury of another. See *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 550 (1983). In 1983, however, this court abandoned the so-called "impact rule" in favor of the zone-of-danger rule for cases involving bystanders. *Id.* at 555. Under the zone-of-danger rule:

> "a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. This rule does not require that the bystander suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct

- 5 -

victim was physically injured that there was a high risk to him of physical impact. The bystander [in addition] must show physical injury or illness as a result of the emotional distress caused by the defendant's negligence." *Id.*

Although some confusion subsequently ensued as to whether *Rickey* eliminated the impact rule for direct victims as well as for bystanders, this court has since clarified that the impact rule remains the law for direct victims of a defendant's negligence, whereas bystanders' claims are now governed by the zone-of-danger rule. *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 42.

¶ 16     By 1983, then, the law in Illinois was that, in order to recover damages for the negligent infliction of emotional distress (NIED), a direct victim of the defendant's negligence must allege and prove a contemporaneous physical injury or impact, whereas a bystander must allege and prove that he or she falls within the zone-of-danger rule. In time, however, these rules came to be understood not just as the rules governing the recovery of damages in NIED cases but also as the rules governing the recovery of emotional distress damages in *all* negligence cases. For example, in *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230 (1987), the parents of a child born with hemophilia brought a wrongful birth action against their doctors and hospital. *Id.* at 233. By way of remedy, the parents sought damages both for the resulting medical expenses and for their own emotional distress. *Id.* One of the issues in *Siemieniec* was whether the parents could recover emotional distress damages in this context. In holding that they could not, this court explained that, "under the holding of *Rickey*, before a plaintiff can recover for negligently caused emotional distress, he must have, himself, been endangered by the negligence, and he must have suffered physical injury or illness as a result of the emotional distress caused by the defendant's negligence." *Id.* at 261. The court then applied the zone-of-danger rule and determined that "[t]here are no allegations in the complaint from which it can be said that the defendants' alleged negligence in any way endangered the parents of the impaired child" or "that the parents have or will suffer any physical injury or illness resulting from the emotional distress allegedly caused by defendants' negligence." *Id.* Accordingly, the court held that the parents in *Siemieniec* "have no cause of action for the emotional distress negligently inflicted by the defendants." *Id.* at 262-63.

¶ 17     In similar fashion, and perhaps more to the point, our appellate court reluctantly applied the zone-of-danger rule to bar the recovery of emotional distress damages in a case involving the cause of action at issue in the case before us, tortious interference with the right to possess a corpse. In *Courtney*, 149 Ill. App. 3d at 397, the refrigeration unit in the defendant's morgue malfunctioned, causing the body of the plaintiff's deceased husband to decompose. *Id.* The plaintiff sued, alleging that the defendant was negligent in failing to preserve her husband's body in a condition suitable for an open casket wake and funeral. *Id.* In bringing the action, the plaintiff acknowledged that she was seeking damages solely for " 'emotional anguish' " that did not result in physical injury or illness. *Id.* at 397-98. Nevertheless, the plaintiff argued that her cause of action should be allowed to proceed because "she was the direct victim of the defendant's alleged negligence, not a bystander, and the injury she sustained (emotional distress) was foreseeable." *Id.* at 401. The defendant moved to dismiss the plaintiff's complaint on the grounds that it failed to state a cause of action, and the trial court denied that motion. *Id.* at 398. The trial court then certified for interlocutory review the question of whether Illinois recognizes a cause of action for emotional distress arising from the negligent mishandling of a corpse. *Id.*

¶ 18    In analyzing the certified question, the appellate court began by citing *Mensinger* for the settled rule that interference with the next of kin's right to possess and make appropriate disposition of a loved one's remains is an actionable wrong and that the plaintiff in such cases is entitled to recover damages for the resulting mental suffering. *Id.* However, unlike the other courts that have since addressed this question, the *Courtney* court did not then simply assert that *Mensinger* mandates a wilful and wanton standard in such cases. Rather, the *Courtney* court correctly emphasized that *Mensinger* "expressly declined to decide whether recovery may be had for mental suffering alone, in the absence of any allegation of proof of wilful or wanton misconduct." *Id.* This observation then freed the court to examine the question for itself in the first instance.

¶ 19    The initial portion of the *Courtney* court's discussion begins with *Rickey*'s reminder that courts " 'generally have been reluctant to allow recovery for purely mental or emotional distress' " and that the reasons for this include " 'that the door would be opened for fraudulent claims, that damages would be difficult to ascertain and measure, that emotional injuries are hardly foreseeable and that frivolous litigation would be encouraged.' " *Id.* at 399 (quoting *Rickey*, 98 Ill. 2d at 555). That being said, the *Courtney* court "seriously question[ed] whether these apprehensions are well founded where the mishandling of a corpse is concerned." *Id.* In support, the *Courtney* court first observed that numerous courts and authorities had by then recognized that recovery for the mishandling of a corpse may be had upon a showing of ordinary negligence. The authorities included both the Restatement (Second) of Torts and Prosser and Keeton on the Law of Torts, the latter of which specifically notes that the mishandling of a corpse creates " 'an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.' " *Id.* (quoting Prosser and Keeton on the Law of Torts § 54, at 362 (W. Page Keeton *et al.* eds., 5th ed. 1984)). The *Courtney* court expressed its full agreement with Prosser and Keeton on this point and stated explicitly that it "[did] not believe that recognizing a cause of action for the negligent mishandling of a corpse would open the door for fraudulent claims or encourage frivolous litigation." *Id.* at 400. Accordingly, the *Courtney* court concluded the initial portion of its analysis by stating that "[w]ere we writing on a clean slate, we would be inclined to permit the complaint in this case to stand." *Id.*

¶ 20    In the very next sentence, however, the *Courtney* court stressed that it was *not* writing on a clean slate and that it "believe[d] that recognition of plaintiff's cause of action is foreclosed by our supreme court's decision in *Rickey*." *Id.* According to the *Courtney* court, the rule that emerged from *Rickey* was that "[w]here there is no contemporaneous physical injury to or impact on him, a plaintiff seeking damages for the negligent infliction of emotional distress must allege both that he was in a zone of physical danger causing him to fear for his own safety and that he suffered physical injury or illness as a result of his emotional distress." *Id.* at 403. Moreover, the court explained that this rule applies with equal force whether the plaintiff is a direct victim of the defendant's negligence or merely a bystander. *Id.* at 402. At that point, and just as this court would do less than a year later in *Siemieniec*, the *Courtney* court concluded that the zone-of-danger rule was the appropriate metric for assessing the sufficiency of the plaintiff's complaint, despite the fact that the plaintiff had not brought a claim for NIED. Not surprisingly, the *Courtney* court found that the plaintiff had failed to state a claim in that "[s]he has not alleged that she was placed within a zone of physical danger causing her to fear for her own safety when she discovered that her husband's body had decomposed and could not be

viewed," nor "has she claimed that she suffered physical injury or illness as a result of her emotional distress." *Id.* In the end, the *Courtney* court answered the certified question in the negative, stating that "Illinois does not recognize a cause of action for emotional distress arising from the negligent mishandling of a corpse." *Id.* at 403.

¶ 21 In both *Siemieniec* and *Courtney*, we see a similar dynamic at work. In both cases, the courts equated the rules governing the recovery of damages in NIED cases with the rules governing the recovery of emotional distress damages in *all* negligence cases. The result was that the recovery of emotional distress damages effectively was barred for any negligence plaintiff who neither suffered a contemporaneous injury nor satisfied the zone-of-danger rule, regardless of the tort that was actually pleaded. It is therefore not surprising that courts would continue to disallow causes of action for emotional distress arising from the negligent mishandling of a corpse, as the plaintiffs in such cases almost by definition will have neither suffered a contemporaneous injury nor satisfied the zone-of-danger rule.

¶ 22 This is where things remained until 2011, when this court revisited this area of the law and concluded that things had gone badly astray. In *Clark v. Children's Memorial Hospital*, 2011 IL 108656, the question again arose whether parents in a wrongful birth case may recover damages for their resulting emotional distress. This time, the court held that they could. In doing so, the court explained that our previous conclusion to the contrary in *Siemieniec* resulted from faulty reasoning. Specifically, the court explained that

> "the zone-of-danger rule applies only in cases where the plaintiff's theory of liability is the negligent infliction of emotional distress. It does not apply where, as in a wrongful-birth case, a tort has already been committed against the plaintiffs and they assert emotional distress as an element of damages for that tort." *Id.* ¶ 113.

By way of example of the first type of case, the court pointed to *Rickey*, where the plaintiff was an eight-year-old boy who witnessed an accident that severely injured his younger brother but who himself did not suffer any physical impact or injury. *Id.* ¶ 105. The court explained that, "[i]n such cases, where the claim of emotional distress is freestanding and not anchored to any other tort against the plaintiff, courts have applied special restrictions such as the zone-of-danger rule because of concerns regarding the possibility of fraudulent claims or frivolous litigation." *Id.* ¶ 106. By contrast, "these special restrictions have no logical bearing on a wrongful-birth claim, where a tort has already been committed against the parents." *Id.* ¶ 107. This is because "[w]rongful-birth plaintiffs do not assert a freestanding emotional distress claim, but merely assert emotional distress as an element of damages for a personal tort." *Id.* Such was the case in *Siemieniec*, where "the plaintiffs clearly saw their emotional harm claim in this light" and "sought damages for emotional distress as 'a natural and foreseeable consequence of the injury they sustained,' a consequence which 'should be included as an essential element in the calculation of damages.' " *Id.* ¶ 108 (quoting *Siemieniec*, 117 Ill. 2d at 260-61). To then drive this point home, the court pointed out that "damages for emotional distress are available to prevailing plaintiffs in cases involving other personal torts," including defamation, conversion, and misappropriation of identity. *Id.* ¶ 111. This, of course, could not be the case if *Siemieniec* was correct and emotional distress damages were recoverable only in cases where the plaintiff either suffered a contemporaneous injury or satisfied the zone-of-danger rule. Accordingly, the court concluded that it "erred in *Siemieniec*

in applying the zone-of-danger rule to wrongful-birth parents' claims," and it therefore "overrule[d] *Siemieniec* on this point." *Id.* ¶ 113.

¶ 23 In light of *Clark*, the critical question in the case before us is not whether plaintiff's third amended complaint alleges facts showing that she herself either suffered a contemporaneous injury or falls within the zone-of-danger rule. Rather, the critical question is whether the theory of liability set forth in that complaint is NIED or, as in a wrongful birth case, some other tort for which emotional distress is simply an element of plaintiff's damages. This is because if plaintiff's claim falls into the latter of these categories, there is no principled reason to disallow the recovery of emotional distress damages upon proof of ordinary negligence. This court has never held that wilful and wanton misconduct is an essential prerequisite for the recovery of emotional distress damages in cases involving interference with the right to possess a corpse, and in fact *Clark* would presume exactly the opposite.

¶ 24 With that in mind, we can state with complete confidence that, just as with the wrongful birth claim in *Clark*, plaintiff's claim here falls into the category of cases in which "a tort has already been committed against the plaintiffs and they assert emotional distress damages as an element of damages for that tort." *Id.* Plaintiff's third amended complaint alleges one count of interference with the right to possess Walter's remains. As we already have discussed, interference with the right to possess a decedent's remains is a distinct and independent tort that has a settled place in Illinois jurisprudence. It arises from the next of kin's common-law right to possess and make appropriate disposition of a decedent's remains and from the correlative duty not to interfere wrongfully with that right. And while the plaintiff in such cases is entitled to recover damages for the mental suffering that is proximately caused by the defendant's misconduct, the actionable wrong in such cases is the interference with the plaintiff's right to possess the decedent's remains, *not* the infliction of the resulting mental distress. In this sense, tortious interference with the right to possess a corpse is analogous to wrongful birth, where the infliction of emotional distress is not *itself* the wrong that was committed but rather is part and parcel of the damage *that results from* the wrong that was committed. Accordingly, just as we have concluded that parents in a wrongful birth case may recover damages for the resulting emotional distress, we likewise conclude that such damages are recoverable in cases involving negligent interference with the right to possess a corpse.

¶ 25 In reaching this result, we note that today's decision brings Illinois into conformity with what has emerged both as the blackletter standard and as the majority rule among courts that have addressed this issue directly. As the appellate court below correctly recognized, while section 868 of the first Restatement of Torts suggested that the recovery of emotional distress damages in cases like this required proof of wilful and wanton misconduct (Restatement of Torts § 868 (1939)), the second restatement now makes clear that such recovery is available upon proof of ordinary negligence:

> "One who intentionally, recklessly or *negligently* removes, withholds, mutilates or operates upon the body of a dead person or *prevents its proper interment or cremation* is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." (Emphases added.) Restatement (Second) of Torts § 868 (1979).

This point is reiterated in the comments to section 868, which stress that "[t]he rule stated in this Section applies not only to an intentional interference with the body itself or with its proper

burial or cremation, but also to an interference that is reckless or merely negligent." Restatement (Second) of Torts § 868 cmt. d (1979). In similar fashion, the most recent edition of Prosser and Keeton on Torts explains the following with respect to claims involving the mishandling of a corpse:

> "[T]he traditional rule has denied recovery for mere negligence, without circumstances of aggravation. There are by now, however, a series of cases allowing recovery for negligent embalming, negligent shipment, running over the body, and the like, without such circumstances of aggravation. What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious. *** Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there may be no good reason to deny recovery." Prosser and Keeton on the Law of Torts § 54, at 362 (W. Page Keeton *et al.* eds., 5th ed. 1984).

As for the series of cases that now allow the recovery of emotional distress damages in cases involving negligent interference with the right to possess a corpse, we direct the reader to the appellate court's opinion below, which contains an expansive citation to relevant decisions from 22 separate jurisdictions, which citation we need not reproduce here. 2016 IL App (4th) 150791, ¶ 51.

¶ 26    The only question that remains, then, is whether plaintiff's third amended complaint states a claim for which relief may be granted. After reviewing the allegations of that complaint, we conclude that it does. In relevant part, plaintiff's third amended complaint alleges that, as Walter's mother and next of kin, plaintiff had a right to possess and make appropriate disposition of Walter's remains. Plaintiff alleges further that, following Walter's death, Walter's body was delivered to the Memorial morgue, where defendant's employees were responsible for receiving it, ensuring that an accurate identity tag was placed visibly upon it, correctly logging its identity and location in the morgue, and ensuring that it was released only to the correct funeral home. Plaintiff then alleges that, in this capacity, defendant and its employees had a duty not to interfere with plaintiff's right to possess Walter's remains, which duty they breached in no less than the six following ways:

> (1) failing to follow hospital policies governing the identification and processing of dead bodies in the morgue,
>
> (2) failing to keep an accurate log that correctly recorded the identity and location of bodies in the Memorial morgue,
>
> (3) violating hospital and industry standards by releasing the wrong body to representatives of a funeral home,
>
> (4) violating hospital and industry standards by releasing a misidentified body to representatives of a funeral home,
>
> (5) releasing a body to representatives of a funeral home when they knew or should have known that the body did not match the description of the body to be transported, and
>
> (6) violating hospital and industry standards by relying entirely on an erroneous logbook entry to confirm the identity of a body in the morgue.

Finally, plaintiff alleges that, as a proximate result of defendant's acts and omissions, plaintiff experienced and suffered severe emotional distress, mental suffering, embarrassment,

humiliation, and financial losses, all of which were the foreseeable consequence of defendant's negligence. In short, plaintiff's third amended complaint properly alleges a legally cognizable duty, a breach of that duty by defendant, and injuries proximately caused by that breach. Taking these well-pleaded facts as true, we conclude that plaintiff's third amended complaint states a claim for tortious interference with the right to possess a corpse. The trial court therefore erred in granting defendant's section 2-615 motion to dismiss.

                                    CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court and remand the cause to the circuit court for further proceedings consistent with this opinion.

Appellate court judgment affirmed.

Cause remanded.