2022 IL App (1st) 211335-U

FIFTH DIVISION
Order filed: May 20, 2022

No. 1-21-1335

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GPIF CRESCENT COURT HOTEL LLC; GPIF WSAN RIVERWALK HOTEL LLC; GPIF BRICE HOTEL LLC; GPIF WPN HOTEL LLC; GPIF WANN HOTEL LLC; GPIF A7 WESTSHORE OPERATOR LLC; and GPIF BROWN PALACE HOTEL LLC, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | No. 2020 CH 05564 |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) | Honorable Alison C. Conlon, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**ORDER**

¶ 1     *Held*:  COVID-19-related loss of use of hotel properties did not qualify as a "physical loss" so as to enable hotels to recover under insurance policy provisions insuring against a "physical loss" of property.

¶ 2    A group of hotel operators, GPIF Crescent Court Hotel LLC, GPIF WSAN Riverwalk Hotel LLC, GPIF Brice Hotel LLC, GPIF WPN Hotel LLC, GPIF WANN Hotel LLC, GPIF A7 Westshore Operator LLC, and GPIF Brown Palace Hotel LLC (collectively, "GPIF"), appeals an order dismissing with prejudice its amended complaint against Zurich American Insurance Company concerning Zurich's denial of coverage for alleged COVID-19-related losses. Because GPIF's loss of use of its properties does not qualify as a physical loss, as required by its policy with Zurich, we affirm the dismissal of the amended complaint.

¶ 3    The following facts are drawn from the allegations in GPIF's amended complaint, which we accept as true and construe in GPIF's favor at the motion-to-dismiss stage. See *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382 (2004).

¶ 4    The GPIF hotels at issue in this case are part of the HEI Hotels & Resorts portfolio. HEI purchased an "all-risk" insurance policy from Zurich covering the period of August 2019 to August 2020. GPIF alleged that its hotels were covered by that policy.

¶ 5    GPIF alleged in its amended complaint that the COVID-19 pandemic, which resulted from the spread of the SARS-CoV-2 virus, caused its hotels to suffer significant harm. Specifically, GPIF alleged that the pandemic "impaired [its] property by making [its] hotels unusable in a way they had been used prior to the outbreak of COVID-19" and that, as a result of its implementation of common containment measures and its compliance with government orders in the states in which its hotels are located, each GPIF property "suspended (slowed or ceased) some or all of its business activities," with the hotels closing entirely for two months and then reopening at a reduced capacity. GPIF also asserted that its hotels had to make "structural alterations, changes and/or repairs" to the properties by installing plexiglass barriers, hand sanitizer stations, and various placards and stickers. Further, the hotels removed and reorganized their furniture in public areas

to promote distancing between guests, and they implemented capacity limits for pools, spas, fitness centers, bars, and restaurants.

¶ 6    GPIF asserted that these limitations on its use of its hotels resulted in substantial economic losses. To recover those losses, it submitted claims to Zurich, which refused to pay. GPIF responded by filing the instant action on behalf of its hotels and similarly situated putative class members. Its amended and operative complaint presented six breach-of-contract claims related to six separate alleged bases for coverage under its policy with Zurich, as well as six corresponding claims for declaratory judgments regarding the six alleged bases for coverage.[1]

¶ 7    Zurich moved to dismiss the amended complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)), arguing that GPIF failed to state a claim for breach of contract. The circuit court granted the motion and dismissed GPIF's action with prejudice. In doing so, the court observed that each of the policy provisions at issue required that GPIF suffer "direct physical loss of or damage" to its property, and the court concluded that, in the absence of physical damage or alteration to the properties, GPIF's alleged loss of use of its properties and inability to fully operate its business did not qualify as a physical loss. The court also ruled that, in the alternative, GPIF's claims were barred by a "Contamination" exclusion in the policy, which, according to the court, excluded claims for losses caused by the actual presence of a virus at a covered property. This appeal follows.

¶ 8    "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422,

---

[1] Given the similarity of the legal issues presented in each pair of corresponding breach-of-contract and declaratory-judgment claims, for the purposes of this appeal we will analyze each pair together as a single claim.

429 (2006) (citing *City of Chicago v. Beretta U.S.A. Corp.,* 213 Ill. 2d 351, 364 (2004)). When ruling on a section 2-615 motion to dismiss, a court must accept the plaintiff's well-pleaded allegations as true and must construe those allegations and any reasonable inferences in the plaintiff's favor. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. "A cause of action should not be dismissed under section 2-615 unless it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* We review the circuit court's order granting a motion to dismiss *de novo*. *Id.*

¶ 9 Resolution of this appeal requires construction of the language of the parties' insurance policy. "The rules applicable to contract interpretation govern the interpretation of an insurance policy." *Sproull v. State Farm Fire & Casualty Co.*, 2021 IL 126446, ¶ 19 (citing *State Farm Mutual Automobile Insurance Co. v. Elmore*, 2020 IL 125441, ¶ 21)). "Our primary objective when construing an insurance policy is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* (citing *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005)). "Undefined terms will be given their plain, ordinary, and popular meaning; *i.e.*, they will be construed with reference to the average, ordinary, normal, reasonable person." *Id.* (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 115 (1992)).

¶ 10 As the circuit court correctly observed, nearly all of GPIF's claims depend on it proving that it suffered a direct physical loss. Looking at the policy's general provisions first, the policy insures against "*direct physical loss* of or damage caused by a Covered Cause of Loss to Covered Property." (Emphasis added.) The policy defines "Covered Cause of Loss" as "[a]ll risks of *direct physical loss* of or damage from any cause unless excluded." (Emphasis added.)

¶ 11    This requirement that the loss be of a physical nature is also present in the more-specialized policy provisions that GPIF contends provide coverage for its COVID-19-related losses. GPIF's first two claims sought to recover under the policy's "Time Element" provision. That section of the policy provides coverage for losses sustained as a result of the necessary suspension of GPIF's business activities at an insured location, including coverage for gross earnings losses and related extra expenses. In its first and second claims for relief, GPIF sought to recover under those Gross Earnings and Extra Expenses provisions, respectively. However, the Time Element provision provides that the suspension of operations "must be due to *direct physical loss* of or damage to Property (of the type insurable under this Policy other than Finished Stock) caused by a Covered Cause of Loss." (Emphasis added.)

¶ 12    GPIF's third claim invoked coverage under a provision covering losses sustained as a result of the necessary suspension of GPIF's business activities "caused by order of civil or military authority that prohibits access" to GPIF's property. As with the Time Element coverages, this Civil or Military Authority provision imposes a requirement that the order "must result from a civil authority's response to *direct physical loss* of or damage caused by a Covered Cause of Loss to property not owned, occupied, leased or rented by the Insured or insured under this Policy." (Emphasis added.)

¶ 13    Similar language is present in the provision at issue in GPIF's fourth claim, which concerned the policy's Protection and Preservation of Property coverage. That provision provides coverage for "[t]he reasonable and necessary costs incurred for actions to temporarily protect or preserve Covered Property; provided such actions are necessary due to actual or imminent *physical loss* or damage due to a Covered Cause of Loss to such Covered Property." (Emphasis added.)

¶ 14   We mentioned earlier that "nearly all" of GPIF's claims required proof of a physical loss, and indeed the policy provisions at issue in two of the six breach-of-contract claims do not impose such a requirement, specifically the "Interruption by Communicable Diseases" provision and an alleged "Sue and Labor" provision. However, GPIF does not contest the dismissal of those particular claims in this appeal. Accordingly, the four claims at issue in this appeal all require proof of either a "direct physical loss" or an "actual or imminent physical loss."

¶ 15   The question then becomes whether the COVID-19-related limitations on GPIF's use of its properties amounts to a physical loss. Despite a substantial amount of litigation around the country in recent months regarding whether various use limitations amount to a physical loss, see *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 20-14812, 2022 WL 1421414, at *8 (11th Cir. May 5, 2022) (collecting cases), at the time that GPIF filed its initial brief in this appeal, Illinois courts had not yet weighed in on the issue. However, since that time both this district and the Second District of the Illinois Appellate Court have issued decisions on the question presented. Both concluded that a COVID-19-related loss of use does not qualify as a physical loss.

¶ 16   In the first of these cases, a café sought a declaration that its insurance policy covered "business income losses it suffered due to the COVID-19 pandemic and the Governor's executive orders, which restricted in-person dining, but not carryout or delivery services, at restaurants and similar establishments." *Sweet Berry Cafe, Inc. v. Society Insurance, Inc.*, 2022 IL App (2d) 210088, ¶ 1. The café alleged that government orders prohibited access to its premises and forced it to significantly reduce its operations. *Id.* ¶ 6. As in this case, the café's insurance policy provided income and expense coverage for "direct physical loss of or damage to" the café's property. *Id.* ¶¶ 9–11.

¶ 17    The appellate court held that such a policy provision "unambiguously requires a physical alteration or substantial dispossession, not merely loss of use." *Id.* ¶ 39. After reviewing dictionary definitions for the terms "direct," "physical," and "loss," the court concluded that " 'physical loss' unambiguously requires that the deprivation be caused by a material thing, which necessarily rules out economic losses resulting from Café's inability to fully run its business." *Id.* ¶ 40. The court also rejected the café's argument that the SARS-CoV-2 virus physically damages tangible property, reasoning that, unlike gas-contamination and asbestos cases, the café's property remained usable with routine cleaning practices and did not need to be repaired. *Id.* ¶ 43.

¶ 18    Particularly relevant to the present case, the court in *Sweet Berry* dismissed the café's argument that the government orders "prohibited access to its business and that the continued orders required it to cease and/or significantly reduce access to, and operations at, its premises," causing "direct physical loss of or damage to" its property. *Id.* ¶ 45.

> "The executive orders did not cause a tangible 'loss of or damage to' Café's property, which is what is required for coverage under the business income and extra expense provisions. They merely prohibited in-person dining, which is one use of the property, but permitted food preparation for carryout dining and delivery. Café seeks to equate loss of use with 'direct physical loss,' which it cannot do. The prohibition on in-person dining was not connected to any change in the physical condition of the premises or property at the premises, nor did it cause any physical harm to the premises or any property. It caused an economic loss for Café." *Id.*

¶ 19    One week after the Second District issued its decision in *Sweet Berry*, our district issued a consistent ruling in *Lee v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210105. As in *Sweet*

*Berry*, the plaintiff in *Lee* was a restaurant seeking to recover losses resulting from government orders limiting its operation of its business. *Id.* ¶¶ 4–6. And, like *Sweet Berry* and the present case, the restaurant's insurance policy covered "direct physical loss" to the restaurant's property. *Id.* ¶ 7.

¶ 20    Citing a case from the United State Seventh Circuit Court of Appeals, *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327 (7th Cir. 2021), and a case from the Illinois Supreme Court, *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278 (2001), this court held that "direct physical loss" requires "a physical alteration to property." *Lee*, 2022 IL App (1st) 210105, ¶ 19. As did the Second District in *Sweet Berry*, this court concluded that the type of limitation on use that the restaurant alleged "constituted an economic loss and not a '*physical* loss' to covered property needed to trigger coverage under the policy." (Emphasis in original.) *Id.* ¶ 20; see also *ABW Development, LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930, ¶ 35 (agreeing with the holdings in *Sweet Berry* and *Lee* and likewise concluding that, under *Eljer*'s definition of "physical," a "physical loss" means a physical alteration to the property). Accordingly, these two cases position Illinois law alongside the apparent majority of states in holding that a COVID-19-related loss of use and resulting economic harm do not amount to a physical loss. See *SA Palm Beach*, 2022 WL 1421414 at *8 ("As far as we can tell, every federal and state appellate court that has decided the meaning of 'physical loss of or damage to' property (or similar language) in the context of the COVID-19 pandemic has come to the same conclusion and held that some tangible alteration of the property is required. There is therefore no coverage for loss of use based on intangible and incorporeal harm to the property due to COVID-19 and the closure orders that were issued by state and local authorities even though the property was rendered temporarily unsuitable for its intended use.").

¶ 21   We find the decisions in *Sweet Berry* and *Lee* to be directly on point and controlling on the issue presented in this appeal. GPIF's allegations are, in all material respects, no different than those made by the plaintiffs in those two cases: containment measures and government orders limited its use of its property, creating an economic loss in the form of lost income and added expenses. Accordingly, like the restaurants in *Sweet Berry* and *Lee*, in order to demonstrate a "physical loss" GPIF was required to allege a "physical alteration to [its] property" (*Lee*, 2022 IL App (1st) 210105, ¶ 19), more specifically "an alteration in appearance, shape, color or in other material dimension" (*Eljer*, 197 Ill. 2d at 312). But it did not do so. Instead, it alleged only that it lost use of its property and that it had to install various items to help contain the spread of the virus (plexiglass barriers, hand sanitizer stations, instructional stickers, etc.). As discussed in *Sweet Berry* and *Lee*, without an allegation of a change to the physical nature of the existing property, these allegations are insufficient to establish a physical loss.

¶ 22   Further, although GPIF did allege that the SARS-CoV-2 virus causes a physical alteration to the property with which it comes into contact, that allegation likewise failed to demonstrate a physical loss because GPIF did not allege that the property needed to be physically repaired or replaced. See *Sweet Berry Cafe, Inc.*, 2022 IL App (2d) 210088, ¶ 43. Indeed, "the mere presence of the virus on surfaces does not constitute 'physical loss of or damage to property' because [SARS-CoV-2] does not physically alter the appearance, shape, color, structure, or other material dimension of the property." *ABW*, 2022 IL App (1st) 210930, ¶ 35; see also *Sweet Berry Cafe, Inc.*, 2022 IL App (2d) 210088, ¶ 43 ("[U]nlike a noxious gas, for example, the virus's presence is easily remediated by routine, not specialized or costly, cleaning and disinfecting or will die off after a few days.").

¶ 23    Because GPIF did not sufficiently allege an alteration to the physical nature of its property, we agree with the circuit court that GPIF's allegations would be insufficient to prove its entitlement to relief on any of its first four claims for relief, the claims that remain at issue in this appeal. Accordingly, dismissal for failure to state a claim was appropriate, and we affirm the order granting Zurich's motion to dismiss.

¶ 24    Affirmed.