2022 IL App (1st) 210510-U

FIRST DISTRICT,
FIRST DIVISION
August 22, 2022

No. 1-21-0510

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

|  |  |  |
|---|---|---|
| BRAD M. GOLD | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 20 CH 03917 |
| CARPENTER, LIPPS & LELAND, LLP, and JOSH GOLDBERG, | ) ) ) | |
| | ) ) | Honorable Jerry A. Esrig, |
| Defendants-Appellees. | ) ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The circuit court erred in dismissing plaintiff's legal malpractice claim against defendants with prejudice, and denying leave to amend complaint, where plaintiff was the prevailing party in the underlying action and entitled to attorney fees under the shareholders' agreement.

¶ 2     On April 20, 2020, plaintiff Brad M. Gold filed a legal malpractice action against defendants Carpenter, Lipps & Leland, LLP and Josh Goldberg (collectively referred to as defendants), alleging that defendants negligently withdrew his petition for attorney fees in an

underlying lawsuit in which they served as local counsel. On appeal, Gold contends that the circuit court erred in dismissing his complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (725 ILCS 5/2-615 (West 2020)) with prejudice and denying his section 2-1301 (735 ILCS 5/2-1301 (West 2020)) petition to vacate judgment and file an amended complaint. For the following reasons, we reverse and remand.

¶ 3                                                BACKGROUND

¶ 4        Defendants represented Gold as local counsel[1] in the underlying lawsuit Gold filed against his father, brother, their family business, Adams Foam Rubber Co. (Adams Foam), and Jerrold Sider (Sider) (collectively referred to as the Adams Foam defendants). Gold was general counsel, a shareholder, and a director of Adams Foam from 2006 to 2016. On December 31, 2013, Gold, his father, and his brother executed a shareholders' agreement, in which Gold's father transferred 20% of his shares in Adams Foam to Gold and 20% to Gold's brother. The day after the shares were transferred, Gold signed an employment agreement with a Texas company and resigned as general counsel for Adams Foam, but remained a shareholder and director.

¶ 5        In June 2016, a "major controversy arose" between Gold and his family. Gold believed that his father and brother were not honoring an agreement to equally distribute proceeds that Adams Foam had received from a class action settlement. His brother and father accused Gold of withholding approval for the purchase of a new piece of equipment. On August 9, 2016, Gold was removed as director of Adams Foam and replaced by Sider. On August 12, 2016, the newly constituted board of directors terminated Gold for cause and repurchased his shares for $43,949.80.

---

[1]Gold's lead counsel was Cleveland Terrazas, PLLC, a Texas law firm.

¶ 6          In September 2016, Gold filed an action against the Adams Foam defendants for shareholder oppression pursuant to the Illinois Business Corporation Act (805 ILCS 5/12.56) (BCA) (count I), seeking the repurchase of his shares at "fair value pursuant to 805 ILCS 5/12.56(e)" and alleging a breach of the shareholders' agreement (count II). He also alleged claims for breach of fiduciary duty (counts III and IV), breach of contract (counts V and VI), constructive trust (count VII), civil conspiracy (count VIII), and defamation (counts IX and X).

¶ 7          The Adams Foam defendants filed multiple counterclaims against Gold, including breach of fiduciary duty, conversion, breach of contract/specific performance, declaratory judgment, and rescission of the shareholders' agreement.

¶ 8          Prior to trial, Gold voluntarily dismissed his breach of shareholders' agreement claim. A joint bench and jury trial was held on the remaining claims and counterclaims. The jury returned a verdict in favor of Gold for "breach of an oral agreement to split the class action proceeds" for $163,251.51. The jury also found in favor of Gold on the Adams Foam defendants' counterclaim for conversion and Gold's defamation claims against his brother and father, awarding him a total of $9,000. The court entered a directed verdict on count V for breach of employment contract in favor of Gold's father and "[c]ount V went to the jury as to Adams Foam, and verdict was entered in the company's favor." The court entered a directed verdict in favor of Gold's father and brother on count VI.

¶ 9          In a memorandum and opinion entered on March 18, 2019, the trial court ruled on the remaining counts. The court found that there was no shareholder oppression under the BCA, but Gold was not fired "for cause," so he was entitled to buyback of his shares at "fair market value" pursuant to the shareholders' agreement, not the "book value" he received. As per the procedure set out in the shareholders' agreement, the trial court ordered that fair market value was to be

determined by an independent appraiser. The trial court ruled in favor of the Adams Foam

defendants on the remaining counts of Gold's complaint and in favor of Gold on the remaining

counterclaims. Because "the defendants [did not] act[] arbitrarily, vexatiously, or otherwise in

bad faith," the court declined to award "attorney fees [Gold] may have incurred in this

proceeding."

¶ 10        On April 16, 2019, the Adams Foam defendants filed a motion for partial reconsideration

and clarification of the trial court's March 18, 2019 order. On April 17, 2019, Gold filed a notice

of appeal. On September 5, 2019, the trial court denied defendants' motion for partial

reconsideration, but clarified the procedure for evaluating the fair market value of Gold's shares.

On October 4, 2019, Gold filed a "Motion for Attorney Fees," arguing that pursuant to section

20.9 of the shareholders' agreement, he was entitled to attorney fees as the prevailing party.

¶ 11        On October 11, 2019, Gold withdrew his October 4, 2019 fee petition and filed a

"Motion for Fees and Motion to Stay."[2] The Adams Foam defendants objected to Gold's refiled

fee petition because "more than 30 days ha[d] elapsed since the Court's September 5, 2019

ruling." Gold's complaint alleges that "[o]n October 31, 2019, Judge Shelley ruled that she

lacked jurisdiction over the attorney fee claim because it was not filed within 30 days of the

judgment." Gold moved to voluntarily dismiss his appeal on November 25, 2019. The mandate

of the appellate court was filed in the circuit court on February 5, 2020.

¶ 12        On April 20, 2020, Gold sued defendants for legal malpractice, alleging that

"[d]efendants knew, or should have known, that upon withdrawal of the [initial] Petition for

---

[2]The record on appeal does not contain a report of proceedings of Gold's re-filed petition for attorney fees. The Adams Foam defendants' objection to Gold's "Motion for Fees and Motion to Stay" indicates that his petition for fees was re-filed on October 11, 2019. Gold's complaint merely asserts that "Defendants attempted to re-file the petition for Attorney Fees, but the Adams Defendant[s] objected on the ground that the trial court had lost jurisdiction."

Attorney Fees, the Circuit Court lost jurisdiction over the lawsuit," and that they "breached the standard of care" by withdrawing that petition. He further alleged that he was entitled to attorney fees as the prevailing party in the underlying suit and "[b]ut for the breach of the standard of care, [he] would have prevailed on the attorney fee claim."

¶ 13    Defendants filed a section 2-615 motion to dismiss Gold's complaint, arguing that he "has not alleged, and cannot allege, that he suffered any injury because he was not the prevailing party in the underlying lawsuit and was therefore not entitled to legal fees in that case." They also argued that they did not proximately cause the loss of any attorney fees because pursuant to Illinois Supreme Court Rule 369(b) and *Chicago Tribune v. College of DuPage*, 2017 IL App (2d) 160274, the trial court was revested with jurisdiction upon issuance of the mandate. Therefore, "successor counsel, Brad, and/or Cleveland Terrazas" proximately caused Gold's injuries "for failing to file Brad's Fee Petition upon return of the mandate after Brad's appeal was dismissed."

¶ 14    On December 18, 2020, the circuit court dismissed Gold's complaint with prejudice. The court found that "the circuit court in the underlying matter *** was revested with jurisdiction to hear a fee petition, pursuant to Illinois Supreme Court Rule 369(b), once the mandate was returned to the circuit court from the appellate court" and that Judge Shelley had declined "to award attorney fees to plaintiff in the underlying matter" in her March 18, 2019 order.

¶ 15    On January 19, 2021, Gold filed a petition to vacate judgment pursuant to section 2-1301 of the Code of Civil Procedure (735 ILCS 5/2-1301 (West 2020)), requesting leave to file an amended complaint. The court denied Gold's petition because his "proposed Amended Complaint is not viable as [he] was not the prevailing party as a matter of law in the underlying lawsuit so [he] could not have prevailed on his underlying attorney fee claim." The court also

found that "the April 17, 2019 Notice of Appeal was legally sufficient to include Plaintiff's claim for attorney fees," and whether defendants were negligent in "failing to inform [Gold] of the consequences of failing to pursue [his] claim for attorneys fees in the appellate court or in the trial court after remand is immaterial because [Gold] had no viable claim for attorneys fees."

¶ 16                                                    ANALYSIS

¶ 17        Gold asserts that the circuit court erred in dismissing his complaint because he "brought suit and prevailed on the significant issues related to the shareholders' agreement," so he was "the prevailing party in the litigation."

¶ 18        A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint based on the face of the pleading. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. In reviewing a section 2-615 dismissal, we accept all well-pleaded facts as true and draw all reasonable inferences from those facts. *Id.* "The essential question is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. "A cause of action should not be dismissed under section 2-615 unless it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* We review a section 2-615 dismissal *de novo*. *Id.*

¶ 19        To state a claim for legal malpractice, a plaintiff must plead "(1) the existence of an attorney-client relationship establishing a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that 'but for' the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) damages." *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58, 62-63 (2002). "Even if negligence on the part of the attorney is established, no action will lie against the attorney unless

that negligence proximately caused damage to the client." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226 (2006). "The existence of actual damages is therefore essential to a viable cause of action for legal malpractice." *Id.*

¶ 20        In order to state a viable claim, Gold must establish that he was entitled to attorney fees in the underlying action. Generally, each party is responsible for its own attorney fees unless a statutory or contractual provision provides otherwise. *Oak Forest Properties, LLC v. RER Financial, Inc.*, 2018 IL App (1st) 161704, ¶ 13. We must "strictly construe a contractual provision for attorney fees." *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 403 Ill. App. 3d 234, 254 (2010). Because the shareholders' agreement provides that the prevailing party is entitled to attorney fees when "any party *** commences an action against the other party to enforce any of the terms hereof or because of the breach by such other party of any of the terms hereof," we only examine the claims and counterclaims that seek to enforce the shareholders' agreement or sue for breach of the agreement. See *Powers v. Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d 511, 517 (2001) (finding that plaintiff's success on a separate issue was "irrelevant to the question of attorney fees because the trial court held that this was a matter independent of the lease").

¶ 21        "A prevailing party, for purposes of awarding attorney fees, is one that is successful on a significant issue and achieves some benefit in bringing suit." *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 280 (2001). A litigant is still considered a prevailing party even if the judgment is below the amount claimed or if they did not prevail on every claim. *Powers*, 326 Ill. App. 3d at 515. However, where a " 'dispute involves multiple claims and both parties have won and lost on different claims, it may be inappropriate to find that either party is the prevailing party and an award of attorney fees to either is inappropriate.' " *Oak Forest*

*Properties, LLC*, 2018 IL App (1st) 161704, ¶ 13 (quoting *Timan v. Ourada*, 2012 IL App (2d) 100834, ¶ 29).

¶ 22    The claims in the underlying lawsuit that sought to enforce the shareholders' agreement are (1) Gold's claim for breach of shareholders' agreement, which was voluntarily dismissed prior to trial, (2) the Adams Foam defendants' counterclaim for breach of shareholders' agreement/specific performance, (3) the Adams Foam defendants' counterclaim for declaratory judgment, and (4) the Adams Foam defendants' counterclaim for rescission of the shareholders' agreement. Specifically, the Adams Foam defendants sought that the trial court "deem that the [shareholders'] [a]greement ha[d] been breached and require specific performance or declare that Brad was rightfully terminated for cause."

¶ 23    The parties conceded at oral argument that Gold prevailed on all of the Adams Foam defendants' counterclaims seeking to enforce the shareholders' agreement. The trial court found that Gold was not terminated for cause, and he was therefore entitled to buyback of his shares at fair market value under the terms of the shareholders' agreement. The trial court also found that there was no basis to rescind the shareholders' agreement.

¶ 24    Defendants argue that the Adams Foam defendants prevailed on count II of Gold's complaint for breach of the shareholders' agreement because Gold voluntarily dismissed that claim prior to trial. We disagree. See, *e.g.*, *Tanna Farms, L.L.C. v. Golfvisions Management, Inc.*, 2018 IL App (2d) 170904, ¶ 15 (finding that defendant's argument that the "voluntary dismissal with prejudice" of plaintiff's claims made defendant the prevailing party "ignores the reality that the plaintiff had already achieved success on most of its claims as a result of the litigation"). Since Gold's claim for breach of shareholders' agreement was dismissed before it was considered by the court, neither party prevailed on that claim. See *1002 E. 87th Street LLC*

*v. Midway Broadcasting Corporation*, 2018 IL App (1st) 171691, ¶ 36 (noting that while dismissals with prejudice constitute adjudication on the merits, "to prevail, a party must be 'successful on any significant issue in the action and *** receive [] a judgment in his [or her] favor***.' "). Because Gold prevailed on the remaining shareholders' agreement claims, he was the prevailing party in the underlying action and is entitled to attorney fees on those claims.

¶ 25        In granting defendant's section 2-615 motion to dismiss, the trial court held that under Illinois Supreme Court Rule 369(b) (eff. July 1, 1982), the circuit court was revested with jurisdiction to hear a fee petition after Gold voluntarily dismissed his appeal "once the mandate was returned to the circuit court from the appellate court." Illinois Supreme Court Rule 369(b) provides that after the mandate is filed in the circuit court following the dismissal of the appeal or affirmance of the judgment, "other proceedings may be conducted as if no appeal had been taken." Ill. S. Ct. R. 369(b) (eff. July 1, 1982). A petition for attorney fees is considered an "other proceeding" under Rule 369(b). See *Coldwell Banker Havens, Inc. v. Renfro*, 288 Ill. App. 3d 442, 447 (1997). The court also relied on "Judge Shelly's refusal to award attorney fees to plaintiff in the underlying matter" in her March 18, 2019 order.

¶ 26        In *Chicago Tribune v. College of Du Page*, 2017 IL App (2d) 160274, ¶ 1, the Chicago Tribune sued the College of Du Page and a non-profit foundation pursuant to the Freedom of Information Act (FOIA). After the circuit court granted summary judgment in its favor, the Tribune sought to recover attorney fees pursuant to FOIA. *Id.* ¶ 25. However, "the circuit court allowed the Tribune to voluntarily dismiss its fee petition without prejudice, in order to defer the issue of attorney fees until after the appeal." *Id.* On appeal, the defendants argued that the circuit court erred in allowing the Tribune to voluntarily withdraw its fee petition without prejudice because "the circuit court will lack jurisdiction to consider any fee petition that the Tribune

might file in the future, because the petition would necessarily be filed outside of the 30-day window for filing postjudgment motions." *Id.* ¶ 60. The Second District disagreed, finding that "[b]ecause we affirm, the circuit court will be revested with jurisdiction to consider other proceedings upon the issuance of our mandate, including a timely filed fee petition." *Id.* ¶ 64. Unlike in the instant case, in *Chicago Tribune*, the circuit court specifically "reserved jurisdiction to consider a renewed fee petition following the resolution of the appeal," the petition was dismissed without prejudice, and it was undisputed that the Tribune's fee petition was timely filed. *Id.* ¶ 60.

¶ 27        Finally, Gold argues that the circuit court erred in denying his section 2-1301 petition to vacate the judgment and file an amended complaint. Section 2-1301(e) of the Code provides that "[t]he court may in its discretion, *** on motion filed within 30 days after entry thereof[,] set aside any final order or judgment upon any terms and conditions that shall be reasonable." The moving party has the burden of establishing sufficient grounds to vacate a judgment. *Day v. Curtin*, 192 Ill. App. 3d 251, 254 (1989). The circuit court's decision to deny a motion to vacate will not be reversed absent an abuse of discretion. *Id.*

¶ 28        "[T]he overriding question is 'whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits.' " *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 16 (quoting *In re Haley D.*, 2011 IL 110886, ¶ 69). In making this determination, the court considers "diligence or lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the order or judgment, and the relative hardships on the parties from granting or denying vacatur." *Jackson v. Bailey*, 384 Ill. App. 3d 546, 549 (2008) (citing *Mann v. Upjohn*, 324 Ill. App. 3d 367, 377 (2001)). While the moving party is not required to show a meritorious

defense and due diligence, it is "relevant" to whether vacatur is warranted. *McCluskey*, 2013 IL 115469, ¶ 16.

¶ 29 The circuit court found that due diligence, the relative hardship of the parties, and the severity of the penalty resulting from the dismissal "would favor [Gold's] petition" "if [he] had a viable claim." As discussed above, Gold was the prevailing party on the shareholders' agreement claims. Therefore, he had a viable claim but was given no opportunity to amend his complaint. See *Cantrell v. Wendling*, 249 Ill. App. 3d 1093, 1095 (1993) (where "plaintiff was given no opportunity to amend her pleading against the [defendant] to cure any defects," the court reversed and remanded because it could not "say on the record before [it] that no amendment could cure the defects in the original complaint"). As we recognized in *Gajda v. Steel Solutions Firm, Inc.*, 2015 IL App (1st) 142219, ¶ 31, courts favor "granting leave to amend a complaint so that the plaintiffs can fully present their cause."

¶ 30 CONCLUSION

¶ 31 For the foregoing reasons, we reverse the orders dismissing Gold's legal malpractice claim with prejudice and denying his section 2-1301 petition to vacate judgment and file an amended complaint.

¶ 32 Reversed and remanded.