2020 IL App (2d) 190823
No. 2-19-0823
Opinion filed August 14, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JEREMY PORTER, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-L-333 |
| | ) | |
| CUB CADET LLC, an Ohio Limited Liability | ) | |
| Company; MTD PRODUCTS, INC., an Ohio | ) | |
| Corporation; and DeKANE EQUIPMENT | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Cub Cadet LLC and MTD Products, Inc., | ) | Susan Clancy Boles, |
| Defendants-Appellees). | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices Jorgensen and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Jeremy Porter, appeals from an order of the circuit court of Kane County dismissing his second amended complaint against defendants, Cub Cadet LLC (Cub Cadet) and MTD Products, Inc. (MTD), and denying him leave to file a third amended complaint. We affirm.

¶ 2                                   I. BACKGROUND

¶ 3    Plaintiff filed his original complaint on June 18, 2018. In addition to Cub Cadet and MTD, plaintiff named DeKane Equipment Corporation (DeKane) as a defendant. Plaintiff alleged that

he purchased a model 7284 utility tractor manufactured by Cub Cadet and MTD. He further alleged that he later had DeKane service the tractor to address a faulty hydraulic pump system. DeKane employees noted that the pump was cavitating and that pump pressure was low. Cavitation and low pressure "are signs of hydraulic fluid stoppage or hydraulic system failure." According to the complaint, Cub Cadet and MTD issued a service advisory to alert dealers and owners of the tractor that Cub Cadet and MTD had produced a reverse flow filter housing assembly and a new model oil filter to address hydraulic pump problems, including hydraulic fluid stoppage. Plaintiff was never informed of the service advisory. While plaintiff was operating the tractor, the engine shut down as a result of hydraulic pump failure, and the tractor rolled over, injuring plaintiff.

¶ 4 Defendants moved to dismiss the complaint. Before ruling on the motions, the trial court entered an agreed order granting plaintiff leave to file an amended complaint. The amended complaint consisted of two counts designated "Failure to Warn—Voluntary Undertaking" (count I)" and "Failure to Warn—Unequal Knowledge" (count II). Cub Cadet and MTD filed a joint motion to dismiss the amended complaint. DeKane filed a separate motion to dismiss. Regarding DeKane, the trial court dismissed both counts of the complaint with prejudice. Regarding Cub Cadet and MTD, the trial court dismissed count I without prejudice and count II with prejudice. The trial court granted plaintiff leave to file a second amended complaint "as to the theory of 'Failure to Warn—Voluntary Undertaking.' "

¶ 5 The second amended complaint contained allegations but no denominated counts. Plaintiff alleged that the tractor was "defectively designed" and that "the manufacturer knew, or should have known, about the defect at the time the [tractor] left its control." Plaintiff further alleged that the tractor "did not meet industry standards at the time of manufacture" and that Cub Cadet and

MTD "deviated from the standard of care that other manufacturers in the industry followed." As he did in the original complaint, plaintiff alleged that he had the tractor serviced by DeKane. DeKane determined that the hydraulic pump pressure was low and the pump was cavitating, and that Cub Cadet and MTD designed a reverse flow filter housing assembly and a new model oil filter to address hydraulic pump problems. According to plaintiff, Cub Cadet and MTD "voluntarily undertook the issuance of a Service Advisory for all 6000 and 7000 Series Cub Cadet compact utility tractors, including Plaintiff's Model 7284." The service advisory was issued to alert authorized dealers and owners of the tractors "that Cub Cadet and MTD had determined that [the] tractors had been incorrectly designed and manufactured." Plaintiff alleged that he was never made aware of the service advisory.

¶ 6        Cub Cadet and MTD again moved to dismiss, arguing, *inter alia*, that portions of the second amended complaint "continue[d] to sound in products liability." Cub Cadet and MTD maintained that the second amended complaint contained only "unsupported, conclusory allegations that the purported defect existed at the time of manufacture." They further contended that plaintiff's voluntary-undertaking claim was flawed because, even if Cub Cadet and MTD negligently performed a voluntary undertaking to warn about tractor's defect, they did not increase the risk to defendant. In response, plaintiff insisted that the complaint included "very specific factual allegations" that the tractor had a design defect. He also contended that he properly alleged that Cub Cadet and MTD's failure to warn of the defect increased the risk of harm. In their reply to plaintiff's response, Cub Cadet and MTD contended that plaintiff had not properly alleged that they knew or should have known of any defect when the tractor left their control.

¶ 7        The trial court granted the motion to dismiss, and plaintiff moved to reconsider or, alternatively, for leave to file a third amended complaint. The proposed third amended complaint,

unlike its immediate predecessor, brought two discrete counts. Count I alleged "product design-negligence," and count II alleged "voluntary undertaking." The trial court denied plaintiff's motion, and this appeal followed.

¶ 8                                  II. ANALYSIS

¶ 9    We first consider whether the second amended complaint stated a cause of action for defective design. We initially note that the trial court found that claim wanting because plaintiff "fail[ed] to adequately plead a factual basis for his conclusory allegations regarding industry standards." Plaintiff observes that defendants did not raise this defect in their motion to dismiss; they first raised it in their reply to plaintiff's response to the motion to dismiss. However, plaintiff cites no authority supporting the premise that defendant's failure to raise the issue earlier warrants reversing the complaint dismissal. Arguments without citation of authority are forfeited. *JPMorgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 2014 IL App (1st) 121111, ¶ 58. Accordingly, we will review the dismissal order on the merits.

¶ 10    A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. For purposes of the motion, all well-pleaded facts and any reasonable inferences arising from those facts must be taken as true. *Id.* "The essential question is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Id.* A motion to dismiss for failure to state a cause of action should be granted only if "it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* Illinois is a fact-pleading jurisdiction. *Daniel v. Chicago Transit Authority*, 2020 IL App (1st) 190479, ¶ 31. "Well-pled facts are specific allegations of fact that bring a complaint within a recognized cause of action; mere conclusory allegations unsupported

by specific facts will not suffice." (Internal quotation marks omitted.) *Id.* (allegation that defendant "was aware" that bus passenger was in a helpless condition was not a well-pleaded fact to establish that defendant had notice of the passenger's condition). A dismissal order under section 2-615 is subject to *de novo* review. *Cochran*, 2017 IL 121200, ¶ 11.

¶ 11 With these principles in mind, we consider whether the trial court properly dismissed plaintiff's defective-design claim. A defective-design claim is based on negligence, and "[a]s in any negligence action, a plaintiff must establish the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 82. As the *Jablonski* court observed:

> "A manufacturer has a nondelegable duty to design a reasonably safe product. [Citation.] Thus, the key question in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product. [Citation.] In determining whether the manufacturer's conduct was reasonable, the question is whether in the exercise of ordinary care the manufacturer should have foreseen that the design would be hazardous to someone. [Citation.] To show that the harm was foreseeable, the plaintiff must show that the manufacturer knew or should have known of the risk posed by the product design at the time of manufacture of the product. [Citations.]" (Internal quotation marks omitted.) *Id.* ¶ 83.

A plaintiff may also establish a breach of duty by proving that "the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed." *Blue v. Environmental Engineering, Inc.*, 215 Ill. 2d 78, 96 (2005).

¶ 12 Plaintiff maintains that he sufficiently alleged that defendants knew or should have known of the risk posed by the design of the tractor. Defendants first contend that the dismissal of

plaintiff's negligent-design claim was proper because, when the trial court dismissed plaintiff's first amended complaint, it granted plaintiff leave only to file an amended complaint raising his failure-to-warn/voluntary-undertaking claim. Defendants alternatively argue that the trial court correctly concluded that the second amended complaint failed to state a cause of action based on a design defect. We need not address the first contention. Assuming for the sake of argument that the dismissal order did not bar plaintiff from raising a defective-design claim, we nonetheless agree with defendants that the second amended complaint failed to state a cause of action based on negligent design.

¶ 13    Defendants correctly argue that a plaintiff "cannot simply write the words 'knew or should have known' in a complaint and survive a § 2-615 motion to dismiss." See *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶¶ 26-27; *Dennis v. Pace Suburban Bus Service*, 2014 IL App (1st) 132397, ¶ 25; *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927, 935 (1997). Plaintiff also alleged in his second amended complaint that defendants "deviated from the standard of care that other manufacturers in the industry followed." However, that allegation, which simply tracks the language of *Blue* verbatim (*Blue*, 215 Ill. 2d at 96), is no less conclusory.

¶ 14    In his reply brief, plaintiff also argues that the second amended complaint stated a claim that Cub Cadet and MTD had a duty to warn "on the basis of unequal knowledge." Plaintiff did not raise the argument in his opening brief, however. Arguments raised for the first time in a reply brief are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 40.

¶ 15    The trial court properly dismissed the second amended complaint's defective-design claim. The question that remains is whether the trial court should have permitted plaintiff to amend the complaint further. The answer hinges on whether plaintiff's proposed third amended complaint

would have cured the defect in the defective-design claim (see *Allen v. Cam Girls, LLC*, 2017 IL App (1st) 163340, ¶ 48), *i.e.*, whether the proposed complaint alleged facts rather than conclusions.

¶ 16    Facts and conclusions exist along a continuum, and it can be difficult to determine how to characterize a particular allegation. 3 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 23.4 (2d ed. 2011); 5 Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice and Procedure § 1218 (Supp. 2020). Our supreme court has observed as follows:

"[T]he line between 'ultimate' facts and 'conclusions of law' is not easily drawn. [Citation.] The same allegation may in one context be deemed to be one of ultimate fact, while in another, *** where from a pragmatic viewpoint some of these words do not give sufficient information to an opponent of the character of evidence to be introduced or of the issues to be tried, they are held to be legal conclusions. What is law, what are facts, and what is evidence, for pleading purposes, can be determined only by a careful consideration of the practical task of administering a particular litigation. [Citation.]" (Internal quotation marks omitted.) *Van Dekerkhov v. City of Herrin*, 51 Ill. 2d 374, 376 (1972).

Consonant with this pragmatic approach,

"[w]here the allegations are so general that the court does not fully understand why the plaintiff believes himself entitled to recover from the particular defendant, and, from the nature of the case, it is reasonable to believe that the additional facts that would make the claim comprehensible are not solely in the possession of the defendant, conclusions are being pleaded." 3 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 23.4 (2d ed. 2011).

¶ 17    In his proposed third amended complaint, defendant alleged that (1) the Joint Industrial Counsel (JIC) "issued standards for stationary hydraulic and pneumatic equipment resulting in the release of ISO 4413 and 4414 that manufacturers in the industry followed," (2) the JIC standards were incorporated into the standards of a successor organization, (3) "[s]ince the 1980s, all manufacturers have utilized [those] standards in designing and manufacturing lawn tractors, and plaintiff's tractor was manufactured after the 1980s," and (4) defendants "designed and manufactured other tractors and vehicles at the time of the manufacture of plaintiff's tractor that did not did not have the hydraulic system failure that was present in plaintiff's *** tractor." Plaintiff did not state specific requirements of the applicable standards or precisely how plaintiff's tractor's design deviated from those standards.    That defendants manufactured other tractors without the alleged design flaw proves nothing about whether plaintiff's tractor's design deviated from industry standards.[1]

¶ 18    *Walker v. Shell Chemical, Inc.*, 101 Ill. App. 3d 880 (1981), supports our conclusion.  In that case, the plaintiffs, a husband and wife, brought a product liability action seeking recovery

---

[1] Plaintiff contends that a complaint is not required to allege facts with specificity if pertinent information is within the defendant's knowledge and control and is unknown to the plaintiff.  See, *e.g.*, *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 66 (1994).  However, plaintiff obviously cannot claim that industry standards are in the control of one particular manufacturer. The proposed third amended complaint acknowledges that the JIC issued the applicable standards. Plaintiff does not claim that he lacks access to those standards.  Presumably, plaintiff also has access to the allegedly defective hydraulic pump.  Given his access to the standards and the pump, plaintiff should be able to explain in more detail how the pump fails to meet those standards.

under a strict-liability theory for personal injuries and loss of consortium. The husband was injured in a fall at a construction site when a guardrail gave way. The plaintiff alleged, *inter alia*, that the guardrail was designed with inadequate welding and materials, was not fabricated to withstand foreseeable use, was "distributed with insufficient warning it would break," and was not inspected prior to installation. *Id.* at 881. Notwithstanding those allegations, *Walker* upheld the dismissal, reasoning that there was "a paucity of factual allegations in the amended complaint." *Id.* at 883. The court explained that:

> "Despite careful study of the entire amended complaint and all counts thereof, we are unable to ascertain how this incident occurred. We do not know what plaintiff was doing when the guardrail failed; where the guardrail was located; what was the cause or reason for its failure and how plaintiff actually used the guardrail at the time of the occurrence." *Id.*

Here, although the proposed third amended complaint explains how plaintiff's accident happened, it sheds little light on the key question of whether Cub Cadet and MTD exercised reasonable care in designing plaintiff's tractor. We therefore conclude that the proposed third amended complaint did not cure the defect in plaintiff's second amended complaint.

¶ 19    We next consider whether the trial court properly dismissed plaintiff's claim for recovery based on the voluntary undertaking doctrine.[2] Plaintiff argues that, by issuing service advisories, Cub Cadet and MTD voluntarily undertook to warn him of the risk of harm from the tractor's

---

[2] Though plaintiff's proposed third amended complaint contained a voluntary-undertaking count, plaintiff does not argue that the trial court erred in denying him leave to file that portion of the third amended complaint.

operation. The voluntary-undertaking doctrine is described in section 323 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 323 (1965)). See, *e.g.*, *Bell v. Hutsell*, 2011 IL 110724, ¶¶ 12-13. Section 323 provides as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

Restatement (Second) of Torts § 323 (1965).

¶ 20 Even assuming there was a voluntary undertaking here and that Cub Cadet and MTD failed to exercise reasonable care, plaintiff fails to explain how the failure increased the risk of harm. He would have suffered the same harm had Cub Cadet and MTD not undertaken to issue service advisories in the first place. Plaintiff does not allege that he relied on the alleged voluntary undertaking. Accordingly, the trial court properly dismissed plaintiff's voluntary-undertaking claim.

¶ 21 In his reply brief, plaintiff cites *Phillips v. Chicago Housing Authority*, 89 Ill. 2d 122 (1982), as authority that Cub Cadet and MTD can be held liable based on a voluntary undertaking even if their negligence did not increase the risk of harm. The argument is unpersuasive. *Phillips* was part of a line of cases relying on section 323 of the Restatement (First) of Torts (Restatement (First) of Torts § 323 (1934)), which imposed an "increased risk" requirement only when the defendant *discontinued* services rendered gratuitously. The "increased risk" requirement did not apply where the defendant rendering services failed to exercise due care. *Phillips*, 89 Ill. 2d at

128-29. As noted, Illinois now follows the approach of section 323 as set forth in the Restatement (Second) of Torts (Restatement (Second) of Torts § 323 (1965)). See *Bell*, 2011 IL 110724, ¶ 12. *Phillips* is inconsistent with more recent precedent from our supreme court. See *id.* ¶ 28 (holding that it would be "illogical, and unsound policy, to hold that defendants could be liable [for failure to act in accordance with their stated intention to prevent underage drinking] because defendants' failure to act on their stated intention did not in any way affect the events as they would have unfolded had the intent to act not been verbalized"). Accordingly, *Phillips* is not controlling.

¶ 22                                                              III. CONCLUSION

¶ 23      For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 24      Affirmed.

---

**No. 2-19-0823**

---

| | |
|---|---|
| **Cite as:** | *Porter v. Cub Cadet LLC*, 2020 IL App (2d) 190823 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 18-L-333; the Hon. Susan Clancy Boles, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Edmund J. Scanlan, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Mark J. McClenathan, Christopher J. Drinkwine, and Craig L. Unrath, of Heyl, Royster, Voelker & Allen, of Rockford, for appellees. |

---